**ORIGINAL**

1  ERIC J. GRIBBIN (Bar No. 205877)
   egribbin@ulmer.com
2  JIM WEINBERG (*Pro Hac Vice* application pending)
   jweinberg@ulmer.com
3  MELISSA L. ZUJKOWSKI (*Pro Hac Vice* application pending)
   mzujkowski@ulmer.com
4  ULMER & BERNE LLP
   1660 West 2nd Street, Suite 1100
5  Cleveland, Ohio 44113-1448
   Telephone: (216) 583-7000
6  Facsimile:  (216) 583-7001

7  Attorneys for Plaintiffs

8

**Filed**

JAN 0 3 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

*Fee paid*
*$I* (99)

9

10

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

11  FLEXTRONICS INTERNATIONAL, LTD.

**C V 13 - 0 0 3 4  PSG**

Case No. _____

12  6201 America Center Drive
    San Jose, California 95002
13
14          and
15  FLEXTRONICS INTERNATIONAL USA,
    INC.
16  6201 Great America Parkway
    San Jose, California 95002
17
18          Plaintiffs,
19          v.
20  PARAMETRIC TECHNOLOGY
    CORPORATION
21  140 Kendrick Street
22  Needham, Massachusetts 02494
23
24          Defendant.
25
26
27
28

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF**
(1) Violations of Computer Fraud and
Abuse Act, 18 U.S.C. § 1030;
(2) Violations of California Computer
Data Access And Fraud Act, Cal. Penal
Code § 502;
(3) Declaratory Judgment – Copyright
Act, 17 U.S.C. §106, *et seq.*;
(4) Declaratory Judgment – Contract;
(5) Trespass to Chattels; and
(6) Conversion.

**DEMAND FOR JURY TRIAL**



COMPLAINT, PAGE 1

For their Complaint against Defendant Parametric Technology Corporation ("PTC"), Plaintiffs Flextronics International, Ltd. and Flextronics International USA, Inc. (collectively, "Flextronics") allege as follows based on personal knowledge as for themselves, and on information and belief as to the acts of others:

## NATURE OF THE ACTION

1.      Flextronics brings this action against PTC for PTC's illegal practice of monitoring, accessing, collecting, using, and transferring data from Flextronics' computers without Flextronics' consent and in violation of the master contract governing the parties' relationship.

## THE PARTIES

2.      Flextronics International, Ltd. is a corporation organized under the laws of Singapore, with its principal place of business in the United States located at 6201 America Center Drive, San Jose, CA 95002.

3.      Flextronics International USA, Inc. is a corporation organized under the laws of California with its principal place of business located at 6201 Great America Parkway, San Jose 95002.

4.      PTC is a corporation organized under the laws of the Commonwealth of Massachusetts, with its principal place of business in the United States located at 140 Kendrick Street, Needham, Massachusetts 02494.

## JURISDICTION AND VENUE

5.      This action arises, in part, under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, and the Copyright Act, 17 U.S.C. §106, *et seq.*  Accordingly, this court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  This Court is the proper venue

for this action pursuant to 28 U.S.C. § 1391 since a substantial part of the events giving rise to this dispute occurred in this district, a substantial part of the property that is the subject of this action is situated in this district, and there is personal jurisdiction over PTC in this district.

6.     This Court has supplemental subject matter jurisdiction under 28 U.S.C. § 1367 over the pendent state law claims because the claims are so related to Flextronics' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## INTRADISTRICT ASSIGNMENT

7.     Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Jose Division.

## FACTS

### The Enterprise Agreement

8.     On or about August 27, 1998, Flextronics and PTC entered into a written contract relating to the use of certain licensed software products. A true and accurate copy of the contract, fully titled "Customer Agreement for Licensed Products between Parametric Technology Corporation ("PTC") and Flextronics, Agreement No. 116179" is attached as Exhibit A and referred to herein as the "Enterprise Agreement."

9.     The Enterprise Agreement is the master contract governing the business relationship between Flextronics and PTC and contemplates the use by Flextronics of certain software products licensed by PTC to Flextronics, including Pro/ENGINEER software.

10.     The Enterprise Agreement does not permit PTC to monitor, access, collect, use, or transfer data from Flextronics' computers.

11.     The Enterprise Agreement contains a broad integration clause that the Enterprise

Agreement constitutes "the complete and exclusive statement of the contract between PTC and [Flextronics] with respect to [PTC's grant to Flextronics of a license to use Licensed Products under the Enterprise Agreement.]" See Enterprise Agreement, § 14.8. The Enterprise Agreement further states that "[n]o waiver, consent, modification, amendment or change of the terms of [the Enterprise] Agreement shall be binding unless in writing and signed by PTC and [Flextronics]." *Id.*

12.    Flextronics and PTC have not executed or agreed to any subsequent modification of the Enterprise Agreement that would permit PTC to monitor, access, collect, use or transfer data from Flextronics' computers.

### PTC's Unauthorized Collection, Use and Transfer of Flextronics' Confidential and Proprietary Business Information

13.    On or about July 26, 2012, PTC communicated to Flextronics that it believed Flextronics was using "substantial numbers" of unauthorized copies of PTC's Pro/ENGINEER software.

14.    As of December 19, 2012, PTC claimed that Flextronics was using the Pro/ENGINEER software on 134 unauthorized computers.

15.    Flextronics has investigated PTC's claim and discovered at most one unauthorized use.

16.    In the course of its investigation Flextronics learned that PTC has been monitoring, accessing, collecting, using and transferring data from Flextronics' computers without permission and in violation of state and federal law, as well as the Enterprise Agreement.

17.    Flextronics brings this lawsuit after discovering PTC's violations. Through its wrongful scheme, PTC has illegally collected, used and transferred Flextronics' proprietary and confidential business information, including Flextronics' MAC and/or IP addresses, email

COMPLAINT, PAGE 4

addresses, personal employee information, and, upon information and belief, other confidential and proprietary business information.

## FIRST CAUSE OF ACTION

### Violation of 18 U.S.C. § 1030, the Computer Fraud and Abuse Act

18.     Flextronics incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

19.     PTC has violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C) by intentionally monitoring and accessing protected computers used for interstate commerce or communication, without authorization or by exceeding authorized access to such computers, and by obtaining information from such computers without permission.

20.     PTC has violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4) by knowingly, and with intent to defraud Flextronics, monitoring and accessing protected computers, without authorization or by exceeding authorized access to such computers, and by means of such conduct furthering an intended fraud and obtaining one or more things of value, including, but not limited to, Flextronics' proprietary and confidential business information, including its MAC and/or IP addresses, email addresses, personal employee information, and, upon information and belief, other confidential and proprietary business information.

21.     PTC has violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A)(i) by knowingly causing the transmission of program, information, code or commands, and as a result, intentionally causing damage without authorization to protected computers owned by Flextronics.

22.     PTC has violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A)(ii) and (iii) by intentionally monitoring and accessing protected computers without authorization, and as a result, causing damage to Flextronics by impairing the integrity

of information and/or data, recklessly or without due regard for its actions.

23.     The computer system or systems which PTC has accessed as described above constitute a "protected computer" as defined in 18 U.S.C. § 1030(e)(2).

24.     Flextronics has been damaged as a result of PTC's wrongful conduct in violation of the Computer Fraud and Abuse Act, in an amount to be determined at trial.

25.     PTC's unlawful access to and theft from Flextronics's computers also have caused Flextronics irreparable injury. Unless restrained and enjoined, PTC will continue to commit such acts. Flextronics's remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Flextronics to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

## SECOND CAUSE OF ACTION
### Violation of Cal. Penal Code § 502, Computer Data Access & Fraud Act

26.     Flextronics incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

27.     PTC has violated Cal. Penal Code § 502(c)(2) by knowingly and fraudulently, and without permission, accessing, taking, copying and making use of programs, data, and files from Flextronics' computers, computer systems, and/or computer networks.

28.     PTC has violated Cal. Penal Code § 502(c)(3) by knowingly and fraudulently, and without permission, accessing and using Flextronics' computers, computer systems, and data.

29.     PTC has violated Cal. Penal Code § 502(c)(6) by knowingly and fraudulently, and without permission, providing or assisting in providing a means of accessing a computer, computer system, or computer network by creating a command that allowed it to impermissibly access, collect, and transmit Flextronics' computers, computer systems, and data.

30.     PTC has violated Cal. Penal Code § 502(c)(7) by knowingly and fraudulently, and

without permission, accessing, or causing to be accessed, Flextronics' computers, computer systems, and/or computer networks.

31.     PTC has violated Cal. Penal Code § 502(c)(8) by knowingly and fraudulently, and without permission, introducing a computer contaminant, as defined in § 502(b)(10), designed to record or transmit information without the intent or permission of the owners of that information.

32.     Flextronics owns the data accessed or obtained by PTC as alleged above.

33.     As a direct and proximate result of PTC's unlawful conduct within the meaning of Cal. Penal Code § 502, PTC has caused damage to Flextronics in an amount to be proven at trial. Flextronics is also entitled to recover its reasonable attorneys' fees pursuant to Cal. Penal Code § 502(e).

34.     Flextronics is informed and believes that the aforementioned acts of PTC were willful and malicious in that PTC's acts described above were done with the deliberate intent to injure Flextronics' business and improve its own.  Flextronics is therefore entitled to recover punitive damages.

35.     Flextronics has also suffered irreparable injury from these acts, and due to the continuing threat of such injury, has no adequate remedy at law, entitling Flextronics to injunctive relief.

### THIRD CAUSE OF ACTION
### Declaratory Judgment – Copyright Act, 17 U.S.C. §106, *et seq.*

36.     Flextronics incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

37.     An actual, substantial, live, exigent, and justiciable controversy exists between PTC and Flextronics with respect to whether or not Flextronics has violated the Copyright Act,

17 U.S.C. §106, *et seq.*

38.    Pursuant to the Enterprise Agreement and the facts alleged above, Flextronics is entitled to a declaration that (a) Flextronics has not infringed upon PTC's copyrights and (b) Flextronics' use of PTC's Pro/ENGINEER software is consistent with Flextronics' licensing rights under the Enterprise Agreement.

39.    This requested relief will conclusively establish the rights and legal relations of the parties.

### FOURTH CAUSE OF ACTION

### Declaratory Judgment – Breach of Contract

40.    Flextronics incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

41.    An actual, substantial, live, exigent, and justiciable controversy exists between PTC and Flextronics with respect to whether or not Flextronics has breached the Enterprise Agreement.

42.    Pursuant to the Enterprise Agreement and the facts alleged above, Flextronics is entitled to a declaration that (a) Flextronics has performed in good faith and is not in violation of the Enterprise Agreement; (b) Flextronics' use of PTC's Pro/ENGINEER software is consistent with Flextronics' licensing rights under the Enterprise Agreement; and (c) PTC is not authorized to monitor, access, collect, use, or transfer data from Flextronics' computers, computer system, and/or computer network.

43.    This requested relief will conclusively establish the rights and legal relations of the parties.

## FIFTH CAUSE OF ACTION

### Trespass to Chattels

44.     Flextronics incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

45.     At all times relevant to this Complaint, Flextronics had legal title to and actual possession of its access-restricted computers, computer system, and/or computer network.

46.     PTC's trespass and interference proximately caused damage to Flextronics, including, but not limited to, damage to Flextronics' rights to dominion and control over its property and damage to the confidential nature of the data stored on Flextronics' access-restricted computers, computer systems, and/or computer networks. As a result, PTC's conduct caused Flextronics' property to diminish in value and deprived Flextronics of its intended use of its property.

47.     Flextronics is entitled to recover any and all damages sustained as a result of such trespass, in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

### Conversion

48.     Flextronics incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

49.     Instead of paying Flextronics for the use of its property, including confidential business information, PTC intentionally and willfully entered Flextronics' computer systems and took possession of Flextronics' property, including its MAC and/or IP addresses, email addresses, personal employee information, and, upon information and belief, other confidential and proprietary business information.

50.     This property is the sole and exclusive property of Flextronics. Flextronics has an

COMPLAINT, PAGE 9

exclusive right to possession and use of such property, which is valuable to Flextronics and vital to its continued business operations.

51.     Flextronics at no time consented, expressly or impliedly, to PTC's copying, downloading, removal, retention, access to, or use of such property.

52.     By its own admission, PTC has been in possession and control of Flextronics' property since at least July 2012, and may have been obtaining unjust and substantial benefit from the sale, distribution, or other use of such property.

53.     PTC's improper assumption of exercise of dominion and control over Flextronics' property has and will continue to interfere with and diminish Flextronics' rights in the property.

54.     Flextronics is entitled to an award of the value of the property taken, with interest, and other damages in an amount to be proven at trial.

### Prayer For Relief

WHEREFORE, Flextronics respectfully prays for the following:

A.      For a preliminary and permanent injunction restraining PTC, its officers, agents, servants, employees, and attorneys, and those in active concert or participation with any of them from:

(1)     accessing any Flextronics' computers, computer systems, and/or computer networks, without Flextronics' authorization;

(2)     removing, downloading or copying property from Flextronics' computers, computer systems and/or computer networks without Flextronics' authorization, including, but not limited to, Flextronics' proprietary and confidential business information, Flextronics' MAC and/or IP addresses, email addresses, and personal employee information;

B.      That the Court order PTC to file with the Court and serve on Flextronics within

COMPLAINT, PAGE 10

thirty (30) days after the service on PTC of such injunction a report in writing, under oath, setting forth in detail the manner and form in which PTC has complied with the injunction;

C.      For an Order directing PTC to return Flextronics' property, including, without limitation, Flextronics' proprietary and confidential business information, Flextronics' MAC and/or IP addresses, email addresses, and personal employee information, as set forth in this Complaint;

D.      For an Order declaring that Flextronics has not violated the Copyright Act, 17 U.S.C. §106, *et seq.*;

E.      For an Order declaring that:  (a) Flextronics has performed in good faith and is not in violation of the Enterprise Agreement; (b) Flextronics' use of PTC's Pro/ENGINEER software is consistent with Flextronics' licensing rights under the Enterprise Agreement; and (c) PTC is not authorized to monitor, access, collect, use, or transfer data from Flextronics' computers, computer system, and/or computer network;

F.      That the Court order PTC to pay Flextronics punitive damages in a sum to be determined at trial, on the basis of PTC's willful and deliberate unauthorized computer access;

G.      For compensatory damages to be proven at trial;

H.      For prejudgment interest;

I.      For an Order awarding Flextronics its attorneys' fees and costs; and,

J.      For an Order awarding Flextronics such other and further relief as the Court deems just and proper.

COMPLAINT, PAGE 11

Respectfully submitted,

By: _____

ERIC J. GRIBBIN (Bar No. 205877)
egribbin@ulmer.com
JIM WEINBERG (*Pro Hac Vice* application pending)
jweinberg@ulmer.com
MELISSA L. ZUJKOWSKI (*Pro Hac Vice* application pending)
mzujkowski@ulmer.com

**ULMER & BERNE, L.L.P.**
1660 W. 2nd Street
Suite 1100
Cleveland, Ohio 44113
TEL: 216-583-7364
FAX: 216-583-7365

**ATTORNEY FOR PLAINTIFF FLEXTRONICS INTERNATIONAL, LTD**

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Plaintiff Flextronics International, Ltd. hereby demands a trial by jury on all issues triable by a jury.

By: _____

ERIC J. GRIBBIN (#205877)

**ATTORNEY FOR PLAINTIFF FLEXTRONICS INTERNATIONAL, LTD**

# EXHIBIT A



**TECHNOLOGY**
**CORPORATION**

12A Technology Drive Waltham, Massachusetts 02154 Phone: 617-398-5000 Fax: 617-398-5409

**CUSTOMER**
**AGREEMENT FOR LICENSED PRODUCTS**                Agreement No.:  116179

CUSTOMER:  FLEXTRONICS INTERNATIONAL

PRINCIPAL ADDRESS:  2241 LUNDY AVE

SAN JOSE, CA  95131

TELEPHONE:  (408) 428-1300  EXT 1314

AUTHORIZED REPRESENTATIVE:  LORRIE DEAL

Parametric Technology Corporation ("PTC") and the Customer named above ("Customer") agree that the following terms and conditions will govern each order submitted by Customer for Licensed Products and Services accepted by PTC.

**1.   DEFINITIONS**
The following terms shall have the following meanings:
1.1    "Consulting Services" provision of assistance hereunder in the use of the Licensed Products and/or their installation, as may be requested by Customer.
1.2    "Designated Computer" central processing unit(s) designated by Customer to PTC prior to the installation of the Licensed Products (as may be modified in accordance with Section 4 of this Agreement).
1.3    "Designated Network" network designated by Customer to PTC prior to the installation of the Licensed Products (as may be modified in accordance with Section 4 of this Agreement).
1.4    "Documentation" user manuals and other written and/a electronic materials furnished by PTC for use with the Licensed Products.
1.5    "Error" any failure by the Licensed Products to conform substantially to the Documentation provided that Customer informs PTC of such failure in writing and PTC can reasonably replicate it.
1.6    "License" the non-exclusive non-transferable right to use the Licensed Products subject to the terms and conditions of this Agreement.
1.7    "Licensed Product(s)" the computer software products specified in a Product Schedule or Purchase Order, for use on then supported hardware platforms/operating systems in machine readable object code form only, including Documentation and any updates, Error corrections and/or New Releases provided to Customer.
1.8    "Maintenance Services" the provision of (i) telephone support, bug fixes and workarounds for the correction of Errors, and (ii) New Releases.
1.9    "New Releases" modified or enhanced versions of the Licensed Products which are designated by an integer change in the product number and which are made generally available by PTC to its customers of Licensed Products.
1.10    "Purchase Order" Customer's written purchase order for (i) Licensed Products and/or (ii) Services which Purchase Order incorporates the terms of this Agreement by reference herein.
1.11    "Services" collectively or separately, Consulting Services, Maintenance Services and/or Training Services.
1.12    "Training Services" the provision of training in the use of the Licensed Products.
1.13    "Users" Customer's employees, consultants, agents, or subcontractors working at Customer's site who are not competitors of PTC and who are directly involved in the utilization of the Licensed Products and who are bound to preserve the confidentiality thereof and to comply with the terms and conditions of this Agreement.

**2.   ORDERS FOR LICENSED PRODUCTS**
Customer may place an order for Licensed Products by submitting to PTC an executed Product Schedule and Purchase Order which contain sufficient information for PTC to package and ship the Licensed Products (an "Order"). In its sole discretion, PTC may accept or reject an Order. An Order shall be deemed accepted upon shipment of the Licensed Products to Customer. An Order may not be canceled by Customer once PTC has accepted it.

**3.   GRANT OF LICENSE**

3.1     On PTC's acceptance of Customer's Order, PTC grants to Customer a License to use the Licensed Products as ordered.

3.2     PTC shall furnish such copies of the Licensed Products as specified in a Product Schedule and Purchase Order to Customer. The Licenses shall remain in effect for the term specified in the Product Schedule unless terminated earlier in accordance with this Agreement.

**4.   USE**

The Licensed Products may only be used in the furtherance of the internal operations of Customer on the Designated Computer or Designated Network by Users situated in the country specified at the installation address in the Product Schedule. The Licensed Products shall not be used by third parties (except Users), or on behalf of third parties without the express written consent of PTC Customer may, from time to time, change (i) the Designated Computer or (ii) the Designated Network, and/or the location thereof, provided that (a) in each case Customer shall give prior written notice to PTC of any such change, and (b) on transferring the Licensed Products to a different country, Customer pays any applicable international transfer fee together with any taxes, tariffs or duties that may be payable on such transfer. Furthermore, Customer acknowledges and agrees that PTC may impose, and Customer shall pay, additional fees for use of Licensed Products in a country other than the country specified as the installation address in the Product Schedule. To assure Customer's compliance with the terms of this Agreement, PTC reserves the right to audit Customer's use of the Licensed Products during normal business hours on reasonable notice and Customer shall give PTC such access that it may require to perform such audit.

**5.   OWNERSHIP, INTELLECTUAL PROPERTY RIGHTS, AND NON-DISCLOSURE**

5.1     Customer acknowledges that PTC and its licensors are the sole owners of the Licensed Products and of any copies thereof, and of all copyright, trade secret, patent, trademark and other intellectual or industrial property rights therein. Physical copies of the Licensed Products, in whatever form provided by PTC, shall remain the property of PTC, and such copies shall be deemed to be on loan to Customer during the term of the Licenses.

5.2     Customer shall not copy or otherwise reproduce the Licensed Products in whole or in part, except for such copying as is essential for archival and system recovery purposes. In addition, Customer may make up to two copies of the Documentation per License in furtherance of its internal operations.

5.3     Customer acknowledges that the ideas and the expressions thereof contained in the Licensed Products are confidential and proprietary information and trade secrets of PTC and its licensors and that PTC will disclose such information and trade secrets to Customer in confidence. Customer shall not cause or permit the decompilation, disassembly or reverse engineering of the Licensed Products or disclosure, copying, display, loan, publication, transfer of possession (whether by sale, exchange, gift, operation of law or otherwise) or other dissemination of the Licensed Products, in whole or in part, to any third party without the prior written consent of PTC. Customer shall limit use of and access to the Licensed Products to Users. Customer shall take all reasonable steps to safeguard the Licensed Products and to ensure that no persons authorized to have access to the Licensed Products shall take any action in violation of this Agreement. Customer shall promptly report to PTC any actual or suspected violation of this Section 5.3 and shall take further steps as may reasonably be requested by PTC to prevent or remedy any such violation.

5.4     Customer shall not alter or remove any copyright, trade secret, patent, trademark, proprietary and/or other legal notices contained on or in copies of the Licensed Products. Customer shall reproduce all such notices on or in all copies of the Licensed Products permitted on be made under this Agreement.

**6.   SERVICES**

6.1     Orders for Services   On PTC's acceptance of a Purchase Order for Services, PTC shall provide such Services in accordance with this Section 6. In its sole discretion, PTC may accept or reject an order for Services.

6.1.1   Consulting Services   PTC shall provide Consulting Services at Customer's direction, at a site and time to be agreed upon by the parties. PTC shall invoice Customer on a time and materials basis in accordance with PTC's then current price list, at intervals throughout the period that the Consulting Services are provided. PTC reserves the right to charge a fee based upon the following scale in the event that Customer cancels or postpones an order for Consulting Services after a date for the provision of the Services has been agreed upon. The parties agree that such charges reflect PTC's likely loss arising from such cancellation or postponement.
- Cancellation or postponement more than 30 days before the scheduled date, no charge;
- Cancellation or postponement more than 15 but fewer than 31 days before the scheduled start date, 25% of the fees for the canceled or postponed Services;
- Cancellation or postponement fewer than 15 days but more than 7 days before the scheduled start date, 50% of the fees for the canceled or postponed Services.
- Cancellation or postponement 7 or fewer days before the scheduled start date, 100% of fees for the cancellation or postponed services.

6.1.2   Training Services   PTC shall provide Training Services to Customer in accordance with its then current price list and training schedule. In the event that Customer cancels or postpones an order for Training Services fewer than 14 days before the scheduled start of such services, PTC reserves the right to charge Customer the full cost of such canceled or postponed Training Services.

6.1.3   Maintenance Services   PTC shall provide the Maintenance Services in accordance with Section 9 of this Agreement without charge during the Warranty Period (as defined in Section 7.1.2) and thereafter only if Customer has ordered and paid for Maintenance Services which will only be provide as part of a Maintenance plan("Maintenance Plan") A Maintenance Plan shall run for a period of one year commencing on the expiration of the Warranty Period and thereafter on the anniversary thereof, subject to Customer paying the appropriate fees for Maintenance Services in accordance with the then current price list If Customer does not order Maintenance Services to commence on the expiration of either the Warranty Period or a Maintenance Plan and subsequently wishes to obtain Maintenance Services, Customer must pay (i) the then current fees for Maintenance Services and (ii) the fees for

Maintenance Services for the period in which Customer did not have the benefit of Maintenance Services. An order for Maintenance Services may not be canceled once the Maintenance Plan has commenced.

8.2 PTC may provide other services relating to the Licensed Products at its sole discretion and on terms and conditions to be attached as a schedule to this Agreement.

8.3 Any intellectual property rights arising from the provision of the Services related to the Licensed Products shall vest automatically in PTC.

8.4 PTC reserves the right to withhold the provision of Services until all invoiced fees are paid.

## 7. WARRANTIES

7.1 PTC warrants that:
- it is authorized to grant the License(s), and
- for a period of ninety (90) days following their installation (the "Warranty Period"), the Licensed Products will be free from Errors. For warranty purposes installation shall be deemed to have occurred upon issuance of an access code.

7.2 PTC's and its licensors' entire liability and Customer's exclusive remedy for any breach by PTC of the warranty given in Section 7.1.2 above shall be, at PTC's sole discretion, either to repair or replace the Licensed Product(s) in accordance with Section 9 below.

7.3 No employee or agent of PTC is authorized to give representations, warranties or covenants greater or different than those contained in this Agreement and Customer agrees that, unless specifically set forth in a schedule to this agreement signed on behalf of Customer by an authorized officer and on behalf of PTC by its Corporate Contracts Manager or Vice President of Finance, no such representation, warranty or covenant has been made by PTC whatsoever with regard to software, hardware, financing or Services.

7.4 EXCEPT AS STATED IN THIS SECTION 7, PTC DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

## 8. INDEMNIFICATION

8.1.1 PTC, at its own expense, will defend any action brought against Customer based on a claim that any Licensed Product infringes a United States patent, copyright or trademark and, at its option, will settle any such action or will pay any final judgment awarded therein, provided that:
- PTC shall be notified promptly in writing by Customer of any notice of any such claim;
- PTC shall have the sole control of the defense of any action on such claim and all negotiations for its settlement or compromise; and
- Customer shall cooperate fully with PTC in the defense, settlement or compromise of such claim.

8.1.2 If a claim occurs or, in PTC's opinion, may occur, Customer shall permit PTC, at PTC's option and expense:
- to procure for Customer the right to continue using the Licensed Product;
- to modify the Licensed Product so that it becomes non-infringing (providing the functionality of the Licensed Product is not materially different from the Documentation); or
- to terminate the License, accept return of the Licensed Products and grant Customer a credit thereon as depreciated on a straight-line five year basis.

8.2 The foregoing provisions of Section 8 notwithstanding, PTC shall not have any liability to Customer under this Section 8 to the extent that any infringement or claim thereof is based upon:
- use of the Licensed Product in combination with equipment or software not supplied hereunder where the Licensed Product would not itself be infringing;
- compliance with designs, plans or specifications provided by Customer;
- use of the Licensed Product in an application or environment for which it was not designed or not contemplated under this Agreement;
- use of other than a current non-infringing release of the Licensed Product(s) provided to Customer by PTC;
- modifications of the Licensed Product by anyone other than PTC or its employees or agents; or
- any claims of infringement of any patent, copyright, trade secret, trademark or other proprietary right in which Customer has an interest.

Customer shall indemnify PTC in respect of any loss or expense PTC may suffer as a result of such infringement or claim under this Section 8.2.

## 9. MAINTENANCE

9.1 Maintenance Services PTC shall provide Maintenance Services to Customer and shall use diligent efforts to repair Errors provided:
- notice of the Error is received by PTC within the Warranty Period or during the term of a Maintenance Plan, as the case may be; and
- Customer supplies such additional information regarding the Error as PTC may reasonably request.

9.2 PTC is not obligated to perform investigation and/or correction of Errors found by PTC to be
- in other than a current, unaltered release of the Licensed Products; or
- caused by Customer's modification of the Licensed Product or use thereof in combination with software not provided by PTC; or
- caused by improper or unauthorized use of the Licensed Products; or
- due to external causes such as, but not limited to, power failures or electric power surges.

9.3   <u>New Release</u>: PTC will provide Customer with one copy of the New Release for each Licensed Product for which Customer is entitled to Maintenance Services at the time the New Release is made generally available. PTC reserves the right to make a nominal charge for computer media, shipping and handling with respect to New Releases. Following shipment of the New Release, the previous release shall remain "current" for purposes of this Agreement for a period of thirty (30) days; thereafter only the New Release will be current.

**10. LIMITATION OF LIABILITY**
THE WARRANTY AND INDEMNIFICATION PROVISIONS OF SECTIONS 7 AND 8 STATE THE ENTIRE LIABILITY OF PTC WITH RESPECT TO THE LICENSED PRODUCTS, INCLUDING (BUT NOT LIMITED TO) ANY LIABILITY FOR BREACH OF WARRANTY, OR FOR INFRINGEMENT OR ALLEGED INFRINGEMENT OF PATENT, COPYRIGHTS, TRADEMARKS, TRADE SECRETS AND OTHER INTELLECTUAL OR PROPRIETARY RIGHTS BY THE LICENSED PRODUCTS, OR THEIR USE EXCEPT AS SET FORTH IN SECTION 8.1, ABOVE, PTC's MAXIMUM LIABILITY ARISING OUT OF, OR RELATING TO, THE CREATION, LICENSE, SUPPLY OR USE OF THE LICENSED PRODUCTS OR THE PROVISION OF SERVICES OR OTHERWISE RELATING TO THIS AGREEMENT, WHETHER BASED UPON WARRANTY, CONTRACT, TORT, OR OTHERWISE, SHALL NOT EXCEED THE TOTAL FEES RECEIVED BY PTC FROM CUSTOMER IN CONNECTION WITH THE MATTER GIVING RISE TO THE CLAIM. IN NO EVENT SHALL PTC BE LIABLE FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF PROFITS, LOSS OR INACCURACY OF DATA OR LOSS OF USE DAMAGES, EVEN IF PTC HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. CUSTOMER SHALL NOT BRING ANY SUIT OR ACTION AGAINST PTC FOR ANY REASON WHATSOEVER MORE THAN ONE YEAR AFTER THE CAUSE OF ACTION ARISES.
The limitations and exclusions set forth in this Section 10 shall not apply to any claim in respect of death or personal injury if contrary to any applicable law.

**11. PAYMENT**
11.1   All fees, including license fees and/or other fees outlined in any Product Schedule or Purchase Order, and any other fees and charges hereunder, are due and payable in full within 30 days of the date of PTC's invoice to Customer, or later if specified on the invoice.
11.2   There shall be added to all charges hereunder:
- all shipping, handling, travel and other out of pocket expenses reasonably incurred by PTC in connection with this Agreement or its performance; and
- amounts equal to any taxes paid or payable by PTC, however designated, levied, or based on this Agreement, or on any Licensed Product, its charges or its use, including without limitation, sales, use, transfer and other taxes and duties imposed by any federal, state, municipal or other governmental authority, and any taxes or amounts in lieu thereof, exclusive, however, of taxes based on the net income of PTC.
- Customer shall pay interest at the rate of 1 1/2% per month on all sums invoiced under the terms of this Agreement which remain unpaid thirty (30) days after due, such interest to commence on the due date. Customer shall pay PTC's reasonable attorney's fees and costs incurred by PTC in collecting overdue amounts, and/or in any controversy or litigation arising under or in connection with this Agreement in which Customer does not prevail against PTC in all of the claims.

**12. TERMINATION**
12.1   This Agreement and any Licenses will terminate and the provision of Services cease
12.1.1   automatically and without notice on the following events:
- Customer's breach of Sections 4, 5.2, 5.3, 5.4 or 14.5;
- Customer is merged or consolidated with any other person or entity;
- a receiver, trustee, or liquidator of Customer is appointed for any properties or assets of Customer;
- Customer makes a general assignment for the benefit of its creditors;
- Customer files a petition under the U.S. Bankruptcy Code or other federal or state statute, (or such similar code or statute in any other jurisdiction) for the reorganization of Customer or any arrangement with its creditors or readjustment of its debt, or its dissolution or liquidation, or such a petition is filed against Customer and is not dismissed within sixty (60) days thereafter; or
- Customer ceases doing business or commences dissolution or liquidation proceedings; or
12.1.2   30 days after written notice from PTC specifying a breach of this Agreement if that breach is not, within that 30 day period, remedied to PTC's reasonable satisfaction.
12.2   Upon termination of this Agreement, Customer shall forthwith: pay all sums owed to PTC by Customer and return the Licensed Products and Documentation and shall certify in writing by an officer of Customer that all copies and system recovery copies thereof have been destroyed and/or deleted from Customer's computer libraries or storage facilities and are no longer in use.

**13. ENFORCEMENT**
Because Customer's breach of any of its obligations under Sections 4 or 5 above will irreparably harm PTC and/or its licensors and substantially diminish the value of the proprietary rights in the Licensed Products, Customer agrees that if it breaches any of said obligations, PTC shall, without limiting its other rights or remedies, be entitled to equitable relief (including, but not limited to, injunctive relief) to enforce Customer's obligations and to protect the proprietary rights of PTC and/or its licensors.

**14. GENERAL**
14.1   Governing Law   This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts without reference to conflict of laws principles (and specifically excluding the U.N. Convention for the International Sale of Goods). All disputes arising under, out of, or in any way connected with this Agreement shall be litigated exclusively in the

Page 4 of 5                                                                 CSL101097-1

courts of the Commonwealth of Massachusetts, and in no other court or jurisdiction.Customer stipulates that the courts of the Commonwealth of Massachusetts shall have personal jurisdiction over its person, and it hereby irrevocably (i) submits to the personal jurisdiction of said courts and (ii) consents to the service of process, pleadings, and notices in connection with any and all actions initiated in said courts. Such service of process may be effected by any of the methods set forth in Section 14.3 below. The parties agree that a final judgment in any such action or proceeding shall be conclusive and binding and may be enforced in any other jurisdiction. The parties waive their right to trial by jury.

14.2  Authorization  Each party represents that the execution, delivery and performance of this Agreement have been duly authorized by such party, and that the person signing on each party's behalf has the power and authority to do so.

14.3  Notices  Any notice or communication required or permitted under this Agreement shall be in writing and shall be deemed to have been received (i) if given by hand, immediately; (ii) if given by air mail, 5 business days after posting; (iii) if given by express courier service, the second business day following dispatch in the jurisdiction of the recipient; or (iv) if given by fax, upon receipt thereof by the recipient's fax machine or in the sender's transmission confirmation report as produced electronically by sender's fax machine to the parties at the addresses set forth above or at such other address as may be given in writing by either party to the other in accordance with this Section.

14.4  Assignment  Customer may not delegate any of its duties or assign, transfer or sublicense any of its rights or obligations under this Agreement without PTC's prior written consent, and any such attempted delegation, assignment, transfer or sublicense shall be void and a breach of this Agreement.

14.5  Export  Customer shall not export or re-export, directly or indirectly, or provide to any other person or entity for export or re-export, any Licensed Products, or technical data related thereto, without first complying with all applicable export control regulations of any jurisdiction to which Customer or the Licensed Products are subject, including, without limitation, obtaining any necessary export or re-export consent from the U.S. Department of Commerce or other governmental authority. Customer will indemnify PTC against any damage, loss, liability or expense (including attorneys' fees) that PTC may incur as a result of Customer's failure to comply with this Section 14.5.

14.6  Severability  It is intended that this Agreement shall not violate any applicable law and the unenforceability or invalidity of any provision (other than the provisions obligating Customer to make payments to PTC) shall not affect the force and validity of the remaining provisions and such invalid provisions shall be deemed severed from this Agreement and, if permissible, be replaced with terms which as closely as possible approximate the intent and economic intent of such invalid provisions.

14.7  Purchase Order  Any Purchase Order issued by Customer in connection with this Agreement shall be solely for the Customer's internal accounting purposes and to facilitate payment; in no event shall the terms of such Purchase Order (other than the line items which serve to order PTC Licensed Product(s) and/or Services) become part of this Agreement or become binding on PTC even if an acknowledgment copy is signed by PTC.

14.8  Entire Agreement  This Agreement (including any schedules hereto) is the complete and exclusive statement of the contract between PTC and Customer with respect to the subject matter hereof. No waiver, consent, modification, amendment or change of the terms of this Agreement shall be binding unless in writing and signed by PTC and Customer.

14.9  Third Party Beneficiaries  It is agreed by the parties to this Agreement that PTC's licensors are intended beneficiaries of this Agreement and have the right to rely upon and directly enforce its term

14.10  Survival  Sections 5,10,11,13 and 14 shall survive termination of this Agreement.

15.  RESTRICTED RIGHTS
The Licensed Products are subject to the following Restricted Rights Legend:
"Use, duplication or disclosure by the Government is subject to restrictions as set forth in (i) FAR 52.227-19, (ii) DFARS 252.227-7013(c)(1)(ii), or (iii) the accompanying license agreement as applicable. The Licensed Products shall be deemed to be "unpublished" and licensed with disclosure prohibitions. Contractor/Subcontractor: Parametric Technology Corporation"
If Customer is acquiring the Licensed Product(s) under a United States government contract, Customer agrees that it will include all necessary and applicable restricted rights legends on the Licensed Products and the Documentation to protect PTC's proprietary rights under the FAR or other similar regulations of other federal agencies. Customer agrees to always include such legends whenever the Licensed Products are, or are deemed to be, a deliverable under a contract.

CUSTOMER                                      PARAMETRIC TECHNOLOGY CORPORATION

By: _Lorrie J. Deal_                          By: _Joseph J. Dullea_

Name: _LORRIE J. DEAL_                        Name: JOSEPH J. DULLEA

Title: _DOCUMENT CONTROL SUPERVISOR_ Title: CORPORATE CONTRACTS MANAGER

Date: _AUG. 27, 98_                           Date:

Page 5 of 5                                   CSL101097-1