| | |
|---|---|
| JOHN B. SULLIVAN (CSB No. 96742) | JAMES L. WEINBERG |
| jbs@severson.com | (Admitted *Pro Hac Vice*) |
| HAROLD R. JONES (CSB No. 209266) | jweinberg@ulmer.com |
| hrj@severson.com | MELISSA L. ZUJKOWSKI |
| SEVERSON & WERSON | (Admitted *Pro Hac Vice*) |
| A Professional Corporation | mzujkowski@ulmer.com |
| One Embarcadero Center, Suite 2600 | ULMER & BERNE LLP |
| San Francisco, California 94111 | 1660 West 2nd Street, Suite 1100 |
| Telephone: (415) 398-3344 | Cleveland, Ohio 44113-1448 |
| Facsimile: (415) 956-0439 | Telephone: (216) 583-7000 |
| | Facsimile: (216) 583-7001 |

ERIC J. GRIBBIN (CSB No. 205877)
egribbin@ulmer.com
ULMER & BERNE LLP
500 W. Madison Street, Suite 3600
Chicago, IL 60661-4587
Telephone: (312) 658-6546
Facsimile: (312) 658-6547

Attorneys for Plaintiffs
FLEXTRONICS INTERNATIONAL LTD. AND
FLEXTRONICS INTERNATIONAL USA, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FLEXTRONICS INTERNATIONAL, LTD., and FLEXTRONICS INTERNATIONAL USA, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> PARAMETRIC TECHNOLOGY CORPORATION, <br><br> Defendant. | Case No. 13-0034 PSG <br><br> **DECLARATION OF DAVID DEFOREST** |

David DeForest, being first duly sworn, deposes and says that:

1. I am over the age of 18 and am under no disability which would render me incompetent to make this Declaration. The statements in this Declaration are based on my own personal knowledge, information, and belief, as well as certain business records of Flextronics International, Ltd. and Flextronics International USA, Inc. (collectively, "Flextronics") to which I have access during the ordinary course of my job duties. All statements herein are true and correct.

2. For the past twenty-one years I have been employed by Flextronics in various capacities. My current title is Senior Director, Global IT, Compliance, Risk and Policy Management. I work at Flextronics' facility located at 6201 Great America Parkway in San Jose, California. I submit this Declaration in support of Flextronics' Memorandum in Opposition to Defendant's Motion for Preliminary Injunction.

3. Flextronics' internal policy specifically forbids the use of copyrighted software on Flextronics' computers without proper licenses and no employee is permitted to install any software on their specific system without a valid license. Any employee found to have engaged in the illegal use of copyrighted software is subject to severe discipline, including immediate termination.

4. On or around July 26, 2012, Jason Swan ("Mr. Swan") of defendant Parametric Technology Corporation ("PTC") forwarded me certain data that PTC disclosed that it had "accumulated" relating to alleged illegal use of PTC software by Flextronics. A true and accurate copy of the email and data report that I received from Mr. Swan is attached hereto as Exhibit A.

5. I responded to Mr. Swan the same day asking for further information to explain the report and the so-called "accumulated data," including specifically inquiring as to how Mr. Swan and/or PTC obtained any information from Flextronics' computers and/or computer systems. A true and accurate copy of my July 26, 2012 response to Mr. Swan is attached hereto as Exhibit B.

6. In response, Mr. Swan informed me on July 31, 2012 that PTC's Pro/ENGINEER software, which Flextronics uses, contains "embedded technology that will initiate a push of information to a PTC server where the data is captured in a database." A true and accurate copy of the email I received from Mr. Swan admitting this practice is attached as Exhibit C. This disclosure both shocked and surprised me because Flextronics had not agreed to permit PTC to access,

1

capture, and transmit data from Flextronics' computers, computer network, or computer system. Flextronics stores highly sensitive commercial information of its own customers on its computer network and would never have assented to the installation of software with such a feature.

7. Despite my serious concerns, I immediately launched a good faith effort to ascertain the validity of PTC's claim that Flextronics had illegally used PTC software. Because PTC provided me very limited information, despite my request, my effort and investigation cast a wide net and involved searching Flextronics' system for any strange or unusual activity.

8. I followed up with Mr. Swan on August 2, 2012 informing him that the limited information PTC had provided (MAC address and domain name) did not allow Flextronics to easily identify the computers that the allegedly illegal copies of PTC's software was installed on. A true and accurate copy of my August 2, 2012 request to Mr. Swan is attached hereto as Exhibit D.

9. Nonetheless, Flextronics has a standard inventory script that it uses to inventory its software. We refer to this inventory script internally as "Flextronics Inventory Service" or FIS. FIS polls every accessible machine in Flextronics' computer network daily to get an inventory of installed software. My FIS team in Austria created a "crawler" designed to identify anomalies like odd serial numbers and references to "cracked" or "pirated" in the PTC directories to identify potentially unauthorized copies of PTC software. We knew that the crawler would likely yield an overbroad result and detect versions of PTC software for which Flextronics had valid licenses, trial versions, and non-existent copies of software. I disclosed this to Mr. Swan by email on September 20, 2012, and he was at all times aware that my initial investigation was likely to lead to an overbroad reporting of potentially unauthorized copies of software. A true and accurate copy of my September 20, 2012 email to Mr. Swan is attached hereto as Exhibit E.

10. On September 21, 2012, I emailed Mr. Swan informing him that the network inventory created by my crawler script had identified 11 potentially unauthorized versions of the software. I referred to the potentially unauthorized versions of the software as "cracked" because Mr. Swan had been using that term. By using the term "cracked" in quotations, I specifically did not intend to state that my inventory showed that Flextronics had illegally pirated PTC's software in 11 instances. Rather, I meant that there were 11 unusual results in the inventory. I intended to gather

2

additional information from PTC so that we could mutually ascertain whether the unusual results identified trial versions of the software, valid licenses, non-existent versions of PTC software, or something else. A true and accurate copy of my September 21, 2012 email to Mr. Swan is attached hereto as Exhibit F.

11. PTC provided Flextronics a "protocol" to investigate Flextronics' computers for instances of illegal software use by physically accessing the computers. Employing this protocol, my team was able to narrow its finding of 11 unusual results to 9 that were potentially unauthorized.

12. On January 31, 2013, with guidance from the PTC technical team on what to look for in PTC's directories, Flextronics finally completed a comprehensive scan of Flextronics' computer systems intended to identify all uses of PTC software and confirm corresponding proper licenses. A true and accurate copy of the results of that scan is attached as Exhibit G. The report identifies two versions of PTC software that appear to be out of compliance with the governing license agreement with PTC. Those versions are identified on lines 973 and 1941 of Exhibit G.

13. Flextronics did not authorize any employee or agent to use PTC software without a license, and any violation of the governing contract is both *de minimus* and inadvertent. Any deployment or use of PTC software without a valid license by any Flextronics employee violated Flextronics' company policy.

14. Nonetheless, David Karamian, one of my team members, contacted PTC, through Kevin Fontaine, to request a quote to purchase licenses for these two apparently non-compliant copies.

15. Since July 2012, Flextronics has been forced to devote significant manpower to investigating the scope of PTC's unauthorized access to Flextronics' computers, computer system and computer network. To date, I have documented approximately $9,300.00 in costs to Flextronics directly associated with that investigation. A true and accurate copy of my report itemizing those costs is attached as Exhibit H. Flextronics' costs continue to grow in connection with the investigation.

3

16. On November 6, 2012, Matthew Maloney sent me a letter describing the extent of the alleged infringement by Flextronics of PTC's software dating back to September 2009. A true and accurate copy of that letter is attached as Exhibit I.

FURTHER DECLARANT SAYETH NAUGHT.



DAVID DEFOREST